**WO**  TCK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Angel Soto, | No. CV 05-0541-PHX-SMM (MEA) |
| Plaintiff, | **ORDER** |
| vs. | |
| Joseph M. Arpaio, et al., | |
| Defendants. | |

In this civil rights action brought by a former county jail inmate, Defendants moved for summary judgment on Count I of the Third Amended Complaint (Doc. #78). Plaintiff responded (Doc. #89), and Defendants replied (Doc. #92). The Court will grant the motion.

**I. Background**

This action commenced by the filing of Plaintiff's Complaint on February 15, 2005. Thereafter, Plaintiff filed an Amended Complaint (Doc. #10). The Court screened and directed service of the Amended Complaint (Doc. #11). Defendants filed an answer (Doc. #19 & 41). Subsequently, Plaintiff was granted leave to amend his complaint to add a new claim – Count II – alleging that Defendant Julian had known that the beans frequently had rocks in them, but he disregarded the risk to Plaintiff's safety (Doc. #62).

In his Third Amended Complaint (Doc. #66), Plaintiff alleges two claims for relief: Plaintiff alleges that on November 7, 2004, while confined at the Madison Street Jail, he broke his tooth on a rock contained in his beans. Three more times in the next couple of months, Plaintiff asserts that he bit down on rocks contained in his beans. Plaintiff sues

Detention Officer Garcia, a dentist named Dr. Noble, and Food Services worker John Julian. The Third Amended Complaint was served prior to the Court's screening.

On August 7, 2006, Defendants filed an answer (Doc. #67). On August 16, 2006, Defendants Garcia, Noble, and Julian moved to dismiss on Count II. On November 22, 2006, the Court denied Defendants' Motion To Dismiss (Doc. #85).

On October 17, 2006, prior to the Court's ruling on Defendants' Motion To Dismiss, Defendants moved for summary judgment on Count I of the Third Amended Complaint (Doc. #78), arguing that they were not deliberately indifferent to Plaintiff's dental needs. The Motion did not address Count II of the Third Amended Complaint.

Plaintiff filed a response to the Motion For Summary Judgment (Doc. #89). Plaintiff's contentions, inter alia, include: (1) That Defendant Noble acted with deliberate indifference by his failure to immediately replace the filling and by his failure to provide Plaintiff with pain medication during Plaintiff's November 17, 2004 examination by Dr. Noble; (2) That Defendant Noble acted with deliberate indifference by filling the wrong tooth, which caused him to have additional pain in his existing damaged tooth; (3) His safety was threatened by the Defendants failure to address the ongoing problem of rocks in the beans.

Defendants replied that Defendants Garcia, Noble and Julian did not know of and disregard an excessive risk to Plaintiff's health and therefore, they did not act with deliberate indifference towards Plaintiff's serious medical needs (Doc. #92).

**II. Summary Judgment Standard**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). When considering a summary judgment motion, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). These inferences are limited, however, "to those

- 2 -

upon which a reasonable jury might return a verdict." Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1220 (9th Cir. 1995).

Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. Celotex, 477 U.S. at 322-23. Rule 56(e) compels the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial" and not to "rest upon the mere allegations or denials of [the party's] pleading." The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party. Anderson, 477 U.S. at 249. Summary judgment is warranted if the evidence is "merely colorable" or "not significantly probative." Id. at 249-50.

**III. Analysis**

**A. Evidence Presented Regarding Plaintiff's Dental Treatment**

On November 7, 2004, while he was incarcerated at the Maricopa County Jail, Plaintiff alleges that he informed Detention Officer Garcia that he bit down on some rocks contained in his beans and as a result, he suffered from a toothache (Plf. Response at 4; Def. MSJ at 2). Plaintiff filed a Medical Request Form for dental treatment on November 7, 2004, alleging that he was having pain in his tooth after biting down on a rock contained in his beans (Def. Ex. ¶4, Affidavit of Noble at 2).

Detention Officers provide inmates with Inmate Medical Request Forms upon request and CHS employees pick up the completed request forms at least once a shift (Def. Ex. ¶4, Affidavit of Noble at 2). Detention Officers do not provide dental treatment or schedule dental appointments. This task is handled by the Correctional Health Services ("CHS"), the entity that provides dental and medical treatment in the jail (Def. MSJ at 2; Aff. of Garcia, Ex.¶ 6 at 1). CHS employees review, prioritize and answer the request forms. Detention Officers bring inmate medical emergencies to the attention of CHS personnel. (*Id.*). Dr.

1 Noble reviewed Plaintiff's Medical Request Form and determined that the request was for
2 routine treatment (Def. Ex. ¶4. Aff. of Noble at 2).

3     Plaintiff was seen by Dr. Noble on November 17, 2004. Upon examination, Dr.
4 Noble noted a minor break at the marginal ridge of tooth #5 (Def. MSJ at 4; Aff. of Noble,
5 Ex. ¶4 at 2; Plf. Resp. at 4). Dr. Noble examined tooth #3 and #4 which contained fillings
6 and advised Plaintiff that filling #4 was sealed but may have been trapping food, which was
7 causing him pain (Def. MSJ at 4; Aff. of Noble, Ex. ¶4 at 2). Defendant Noble advised
8 Plaintiff that if he would be incarcerated at the jail longer than 8-10 weeks he could replace
9 the filling. Alternatively, his recommended course of treatment was for Plaintiff to receive
10 a crown on the tooth when he was transferred to the Department of Corrections (Plf.
11 Response at 3; Ex. ¶4, Aff. of Noble at 2; Def. MSJ at 4). The Maricopa County Jail does not
12 have the equipment to do a crown (Def. Ex. ¶4, Aff. of Noble at 2). Defendants claim that
13 Plaintiff agreed to wait and receive treatment and a crown at ADOC (Ex. ¶4; Aff. of Noble
14 at 3). Plaintiff asserts that he requested the tooth be repaired immediately because he was
15 in serious pain but Defendants denied his request (Plf. Resp. at 5).

16     On December 1, 2004, Plaintiff submitted a second Inmate Medical Request Form,
17 stating that he would be in jail longer than he anticipated and requested to have his tooth
18 filled (Plf. Resp. at 7; Def. MSJ at 5; Def. Ex. ¶4, Aff. of Noble at 3). On December 22,
19 Plaintiff was examined by Dr. Gray, another CHS Dentist (Def. Ex. ¶4, Aff. of Noble at 3;
20 Plf. Resp. at 7). Plaintiff was informed by Dr. Gray that his request was for routine dental
21 care and informed Plaintiff he would be scheduled in 2-3 weeks (Def. Ex. ¶4 at 3; CHS
22 Dental Records; Def. Ex. ¶6).

23     On December 22, 2004, Plaintiff had another dental visit (Def. Ex. ¶4, Aff. of Noble
24 at 3). It is disputed which tooth Plaintiff requested to be filled. Plaintiff claims that he
25 requested a filling in tooth #4, which he claims is the tooth in which Dr. Noble previously
26 observed a break in the marginal ridge and suggested that he receive a crown (Plf. Resp at
27 7). Defendants assert that Plaintiff requested a filling in tooth #5, which was the tooth Dr.
28 Noble previously observed with a minor break in the marginal ridge (Def. MSJ at 5; Def. Ex.

- 4 -

¶4. Aff. of Noble at 3). Dr. Noble removed the decay from tooth #5 and put in a new filling. Defendants claim that Dr. Noble examined tooth #4 and found no break, cavity or other condition requiring treatment (Def. MSJ at 5; Def. Ex. ¶4 at 3-4). Plaintiff asserts that without his knowledge, Dr. Noble removed decay from tooth #5 and put in a new filling (Plf. Resp. at 7).

Later in the day on December 22, 2004, Plaintiff filed an Inmate Medical Request Form, alleging that Defendant Noble filled the wrong tooth (Def. MSJ at 5; Def. Ex. ¶4, Aff. of Noble at 4; Plf. Resp. at 7). Defendants responded that the correct tooth had been filled and Plaintiff was required to submit an additional request form to be seen by the Dentist again (*De*f. MSJ at 5; Def. Ex. ¶4, Aff. of Noble at 4).

Plaintiff filed additional request forms on January 12, 2005, January 20, 2005 and February 1, 2005, alleging that Defendant Noble filled the wrong tooth (Plf. Resp. at 9; Def.MSJ at 5; Def. Ex. ¶4 at 4). Plaintiff was scheduled for an appointment on February 17, 2005. Defendants claim Plaintiff refused to be seen for treatment on that date (Def. MSJ at 5; Def. Ex. ¶4 at 4; Def. Ex. ¶6). Plaintiff claims that he was seen by Dr. Noble and he requested a consult by a private dentist, but Plaintiff was told he could not because of his custody level (Plf. Resp. at 10).

On February 28, 2005, Plaintiff was transferred to the Arizona Department of Corrections ("ADOC") (Def. Ex. ¶4 at 4; Def. Ex. ¶1). Upon arrival at ADOC, Plaintiff immediately submitted a Health Needs Request, stating that he had a broken tooth, causing him headaches and bleeding teeth (Plf. Resp. at 10). At his exam on March 17, 2005, Plaintiff's ADOC dental chart showed a slight chip of Plaintiff's distal lingual aspect of the existing mesial occllusal distal alloy (silver filling) at the #4 bicuspid (Def. MSJ at 5; Def. Ex. ¶4 at 4). This filling was replaced by the ADOC dentist on July 26, 2005 (*Id*.; Plf. Resp. at 10-11).

**B. Deliberate Indifference Standard**

To prevail on his Eighth Amendment claim, Plaintiff must show that Defendants were deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104

- 5 -

(1976). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health. Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). In the medical context, deliberate indifference may be shown by (1) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (2) harm caused by the indifference. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle, 429 U.S. at 104).

A mere difference of medical opinion does not amount to deliberate indifference. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). To prevail on a claim involving choices between alternative course of treatment, a prisoner must show that the chosen course was medically unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to the prisoner's health. Id. Medical malpractice – negligence in diagnosing or treating a condition, or an inadvertent failure to provide adequate medical care-does not rise to the Eighth Amendment level. Id. at 1057; Jett, 429 F.3d at 1096.

When a prisoner attempts to hold a prison employee responsible for deliberate indifference, the prisoner must establish individual fault. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988). Sweeping conclusory allegations will not be sufficient to prevent summary judgment. Id. "The prisoner must set forth specific facts as to each individual defendant's deliberate indifference." Id. at 634. He must prove that the specific prison official was deliberately indifferent and that this indifference was the actual and proximate cause of the injury. Id.

**1. Defendant Noble**

Plaintiff contends that Defendant Noble acted with deliberate indifference by delaying his dental treatment and by allegedly filling the wrong tooth for Plaintiff, causing him unnecessary pain and suffering (Plf. SOF, Doc. #90 at ¶25). Plaintiff also contends that he did not agree to wait to have his tooth filled (Plf. SOF, Doc. #90 at ¶20). Plaintiff also appears to contend that Dr. Noble should have immediately acted to fill tooth #4 after he notified him of the alleged mistake (Plf. SOF, Doc. #90 at ¶25). The evidence in the record

1 would not permit a reasonable jury to make the inference that Defendants were deliberately
2 indifferent to his serious medical needs.

3   Defendants provided evidence that on November 7, 2004, Plaintiff filed a Medical
4 Request Form for dental treatment, stating that he had been having pain since biting down
5 on a rock contained in his beans earlier that day (Def. Ex. ¶4, Aff. of Noble at 2; CHS Dental
6 Records, Def. Ex. ¶6). Dr. Noble immediately reviewed Plaintiff's request and determined
7 the request was for routine dental treatment (**Id**.).

8   Plaintiff was first seen by Dr. Noble on November 17, 2004 (Def. Ex. ¶ 4, Aff. of
9 Noble at 1; Plf. Exhibit 9 at 25; CHS Dental Records, Def. Ex. ¶6). Plaintiff's dental records
10 reflect that Plaintiff sought an evaluation on two of his teeth, numbers 4 and 5. Upon
11 examination, Dr. Noble concluded that Plaintiff had a minor break at the marginal ridge in
12 tooth #5 and the filling was sealed but may be trapping some food (**Id**.). Plaintiff was told
13 by Dr. Noble that his treatment options were to replace the filling or wait until he was
14 transferred to the Department of Corrections and have a crown put on the tooth (Def. Ex. ¶
15 4, Aff. of Noble at 2 Plf. Exhibit 9 at 25; CHS Dental Records, Def. Ex. ¶6)). Dr. Noble did
16 not observe any condition requiring treatment for tooth #4 (**Id**.).

17   On December 1, 2004, Plaintiff placed a request to have the tooth filled, stating that
18 he would be in jail longer than 8-10 weeks (Def. SOF at ¶22). On December 22, 2004,
19 Plaintiff was seen by Dr. Noble and requested to have tooth #5 restored. Plaintiff's dental
20 records reflect that Dr. Noble removed all of the decay from tooth #5 and a filling was placed
21 in that tooth (Def. Ex. ¶4; Aff. of Noble at 3-4; Def. Ex. ¶6). Dr. Noble did not observe any
22 condition requiring treatment to tooth #4 (Def. Ex. ¶4; Aff. of Noble at 3; Def. Ex. ¶6).

23   Later in the day on December 22, 2004, Plaintiff filed an Inmate Medical Request
24 Form, stating that Dr. Noble filled the wrong tooth (Plf. Ex. ¶12 at 35). Dr. Noble responded
25 promptly, stating that he had filled Plaintiff's tooth #5, as Plaintiff had requested, and if he
26 wanted to be seen again by dental staff, Plaintiff must submit a new Inmate Medical Request
27 Form (Def. Ex. ¶4, Aff. of Noble at 4).

28

1       Plaintiff submitted another Medical Request Form on January 12, 2005, stating that Defendant Noble had filled the wrong tooth (Plf. Ex. ¶12 at 35; Def. Ex. ¶4 at 4). Plaintiff was scheduled to be seen on February 17, 2005, but refused evaluation and treatment and requested to be seen by a "private dentist" (Def. Ex. ¶6, Plf. dental records). Plaintiff was transferred to the Department of Corrections on February 28, 2005 (Def. Ex. ¶1).

      Even viewing the evidence in the light most favorable to Plaintiff, he still has not established that Dr. Noble exhibited deliberate indifference. Plaintiff's first request for treatment was evaluated promptly and characterized by Dr. Noble as a non-emergency and therefore, he was informed that he would be seen in 2-3 weeks (Def. Ex. ¶4; Aff. of Nobl at 1). Plaintiff was seen ten days after his request (Def. Ex. ¶6, Plaintiff's dental records). Thereafter, each request made by Plaintiff was evaluated promptly. Plaintiff only experienced delays of 21 days and 28 days between his successive requests to be seen by medical staff. A mere delay in medical or dental care, without more, is insufficient to state a claim against prison officials for deliberate indifference. Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). Plaintiff must show the delay in treatment was harmful. Id. Plaintiff has failed to present any evidence that the alleged delay in treatment resulted in further significant injury or posed an excessive risk to his health. Jackson v. McIntosh, 90 F. 3d 330, 332 (9th Cir. 1996), Clement v. Gomez, 298 F. 3d 898, 904 (9th Cir. 2002). This conclusion is supported by the affidavit of Doctor Noble.

      Moreover, even assuming, arguendo, Plaintiff's allegations as true that Defendant Noble filled the wrong tooth, at most, Dr. Noble's actions were negligence or medical malpractice. The Eighth Amendment does not require optimal medical or dental care; rather, it prohibits deliberate indifference. Mere claims of "negligence," or "medical malpractice" do not support a claim under 42 U.S.C. Section 1983. Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980). Inadequate treatment due to malpractice or even gross negligence, does not constitute an Eighth Amendment violation. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, the

1   prisoner "must allege acts or omissions sufficiently harmful" to evidence deliberate
2   indifference to serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285,
3   292, 50 L. Ed. 2d 251 (1976); Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986),
4   cert. denied, 481 U.S. 1069, 107 S.Ct. 2462 (1987).

5   Plaintiff's subsequent records from the Department of Corrections indicate that
6   Plaintiff sustained a slight chip in the existing filling of Plaintiff's tooth #4 ( Plf. Ex. ¶15 at
7   2). Although it is not clear from the record whether this chip existed during Plaintiff's stay
8   at the county jail, even assuming, arguendo that it did, differences in judgment between an
9   inmate and prison medical personnel regarding appropriate medical diagnosis or treatment
10  are not enough to state a deliberate indifference claim. Jackson v. McIntosh, 90 F.3d 330,
11  332 (9th Cir.), cert. denied, 117 S.Ct. 585 (1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.
12  1989).

13  Finally, Plaintiff alleges that Defendants acted with deliberate indifference by their
14  failure to allow him to see a "private dentist" after Dr. Noble allegedly fixed the wrong tooth
15  for Plaintiff.  A prison inmate has no independent constitutional right to outside medical or
16  dental care additional and supplemental to medical care provided by staff within the
17  institution. Roberts v. Spalding, 783 F.2d 867, 870-71 (9th Cir. 1986), cert. denied, 107 S.Ct.
18  399;  See Estelle v. Gamble, 429 U.S. 97, 103-04, 97 S.Ct. 285, 290-91, 50 L.Ed.2d 251
19  (1976).

20  On this record, a reasonable jury could not find that Dr. Noble acted with deliberate
21  indifference. Accordingly, summary judgment in favor of  Defendant Noble is warranted.

22  **2.  Defendant Garcia**

23  Defendant Garcia is employed as a Detention Officer at the Maricopa County Jail.
24  In his Third Amended Complaint, Plaintiff asserts that he notified Defendant Garcia that he
25  was seeking medical attention for pain in his tooth.  Plaintiff contends that Defendant Garcia
26  refused to call medical and refused to make a referral.  Plaintiff contends that Defendant
27  Garcia advised Plaintiff that he must submit an Inmate Medical Request Form to be seen by
28  dental staff and because his request was not an emergency, it could take up to a month for

- 9 -

1 him to be seen (Plf. Third Amend. Comp. at 4).  Plaintiff also contends that he notified
2 Defendant Garcia about a second incident which occurred wherein he again bit down on a
3 rock contained in his beans, which caused Plaintiff pain to his existing broken tooth (Plf.
4 Third Amend. Comp. at 6).  Plaintiff contends that Defendant again ignored his request for
5 dental care.  Plaintiff contends that Defendant Garcia was aware of Plaintiff's pain yet
6 disregarded his serious medical needs (Plf. Third Amend. Comp. at D-4).

7 Defendant Garcia avows that on November 7, 2004, Plaintiff informed him that he bit
8 down on a rock which caused his tooth to hurt (Def. Ex. ¶3; Aff. of Garcia at 2). Defendant
9 Garcia advised Plaintiff to fill out an Inmate Medical Request Form, per MCSO policy, to
10 request to see the dentist.  Defendant asserts that he provided Plaintiff with a form (**Id**.).
11 The Inmate Medical Request Form was received and acted upon by CHS and Plaintiff was
12 seen by a dentist on November 17, 2004 (Def. Ex. 4, Aff. of Noble at 1). Plaintiff further
13 alleges that on a second occasion Plaintiff informed him that he bit down on a rock, injuring
14 his tooth.  Defendant claims that he provided Plaintiff with an Inmate Medical Request Form
15 (Def. Ex. ¶3; Aff. of Garcia at 2.).

16 Plaintiff has provided no evidence that Detention Officer Garcia denied, delayed or
17 intentionally interfered with his dental treatment. Estelle v. Gamble, 429 U.S. at 97.
18 Defendants provided evidence that Detention Officer Garcia complied with CHS policy by
19 providing Plaintiff with an Inmate Medical Request Form (Def. Ex. 3; Aff. of Garcia at 1).
20 Plaintiff submitted his request on the same day that he allegedly injured his tooth (**Id**.).
21 Despite the fact that Plaintiff did not receive immediate medical attention, the evidence
22 shows that his requests and grievances were processed by personnel within appropriate time
23 frames.

24 Even assuming, arguendo, that Defendant Garcia delayed in providing Plaintiff with
25 forms, Plaintiff has failed to present any evidence that the alleged delay in treatment resulted
26 in further significant injury or posed an excessive risk to his health. Jackson v. McIntosh,
27 90 F. 3d 330, 332 (9th Cir. 1996), Clement v. Gomez, 298 F. 3d 898, 904 (9th Cir. 2002).
28 Accordingly, Defendant's actions do not rise to the level of deliberate indifference causing

- 10 -

an excessive risk to Plaintiff's health and safety and therefore Defendant Garcia is entitled to judgment as a matter of law.

**3. Defendant Julian**

In the Third Amended Complaint, Plaintiff asserts that Defendant Julian "is responsible for the preparation and cleaning process of such foods as potatoes, beans, etc" (Plf. Third. Amend. Compl. at C-4). Plaintiff claims that Defendant Julian "did not ensure Plaintiff's health and safety because he took a risk by not sending the donated beans to the mill and have them triple-cleaned prior to having them hand-sorted through and remove any visible small pebles (sic) then serving them to Plaintiff" (Third. Amend. Compl. at D-4). Plaintiff also contends that "Defendant Julian knew there was a substantial risk of serious harm to the Plaintiff if the beans were not properly cleaned" (Third. Amend. Compl. at D-4).

Although the allegations are set forth in Count I, the allegations against Defendant Julian relate to Plaintiff's claim for health and safety set forth in Count II of the Third Amended Complaint. To state a valid claim under § 1983, Plaintiff must allege that he suffered a specific injury as a result of the specific conduct of a defendant, and show an affirmative link between the injury and the conduct of that defendant. Rizzo v. Goode, 423 U.S. 362, 371-72, 377, 96 S. Ct. 598, 604-05, 607, 46 L. Ed. 2d 561, 569-70, 573 (1976). To state a claim against a state official, the civil rights complainant must allege that the official personally participated in the constitutional deprivation or that a state supervisory official was aware of widespread abuses and with deliberate indifference to the inmate's constitutional rights, failed to take action to prevent further misconduct. King v. Atiyeh, 814 F.2d 565, 568 (9th Cir. 1987); See Monell v. New York City Department of Social Services, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).

Plaintiff's deliberate indifference claim is the only issue before the Court in Defendants Motion for Summary Judgment. Plaintiff has failed to allege how Defendant Julian was involved in Count I, obtaining dental care for Plaintiff. Moreover, Defendant Julian avows that during the dates of Plaintiff's incarceration from December 8, 2003 to March 9, 2005, he was not involved in obtaining dental care for inmates nor did he have any

direct contact with Plaintiff (Def. Ex. ¶5, Aff. of Julian at 2). Accordingly, Defendant Julian is entitled to judgment as a matter of law.

### IV. Conclusion

The Court will GRANT Defendants' Motion For Summary Judgment on Count I of the Third Amended Complaint (Doc. #78) as to Defendants Noble, Julian and Garcia.

Count II, Plaintiff's Threat To Safety claim, was not addressed in Defendants' Motion For Summary Judgment and Defendants Motion To Extend the dispositive motion deadline was denied (Doc. #87). Accordingly, Count II of the Third Amended Complaint is still pending.

**IT IS ORDERED:** That Defendants' Motion For Summary Judgment (Doc. #78) is GRANTED as to Defendants Noble, Julian and Garcia and Count I of the Third Amended Complaint.

DATED this 1st day of August, 2007.

Stephen M. McNamee
United States District Judge